UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

**JIMMY LEE BYNUM, JR.,**          )
                                  )  **Case Number 20-2343**
              Plaintiff,          )
                                  )
      vs.                         )
                                  )  March 25, 2024
                                  )  10:31 a.m.
**KRISTY BANDZA, et al.,**          )
                                  )
              Defendant.          )


**<u>FINAL PRETRIAL HEARING</u>**


**BEFORE THE HONORABLE COLIN S. BRUCE**
United States District Judge


<u>Court Reporter</u>:

LISA KNIGHT COSIMINI, RMR-CRR
U.S. District Court
201 South Vine
Urbana, Illinois 61802


Proceedings recorded by mechanical stenography;
transcript produced by computer.

A P P E A R A N C E S :


For the Plaintiff:    **DARREN VAN PUYMBROUCK, ESQUIRE**
                      MARK RAVEN LLC
                      2524 North Burling Street
                      Chicago, Illinois 60614
                      312-304-9530
                      darren@raven.law

                      **CLARISSA Y. CUTLER, ESQUIRE**
                      2008 West Concord Place
                      Chicago, Illinois 60647
                      312-953-7329
                      clarissa@raven.law



For the Defendants:   **DAVID A. MOORE, ESQUIRE**
                      **KATHERINE E. STRYKER, ESQUIRE**
                      LANER MUCHIN, LTD.
                      515 North State Street, Suite 2400
                      Chicago, Illinois 60654
                      312-467-9800
                      dmoore@lanermuchin.com
                      kstryker@lanermuchin.com

 1                    (In virtual courtroom, 10:31 a.m.)

 2          COURTROOM DEPUTY:  All right.  This is Case

 3   20-2343, *Bynum v. Bandza, et al.*

 4          THE COURT:  All right.  We have -- on behalf

 5   of the plaintiff, we have Mr. VanPuymbrouck and

 6   Ms. Cutler.  On behalf of the defendants, we have

 7   Mr. Moore and Ms. Stryker.

 8          The matter is set today for a final pretrial

 9   conference.

10          So I've been a federal judge for over ten

11   years, and I have to say:  This is the first time I've

12   had a fight over a motion to continue in a civil case

13   that generated both a response and a reply.

14          Why don't you give me some more details

15   about -- on behalf of the defendant -- why you need

16   that continuance, Mr. -- either Mr. Moore or

17   Ms. Stryker, whoever wants to respond.

18          I mean, is the issue you don't have --

19          MR. MOORE:  Judge, I --

20          THE COURT:  -- you don't have, you don't

21   have -- the fact that the defendant might not be

22   available, you've got depositions.  Defendants don't

23   have to be here for the entire trial.

24          I presume neither one of you have volunteered

25   to do a pro bono prisoner case, but oftentimes the

 1   prisoners will sue literally a dozen defendants.  And

 2   we have, oftentimes, defendants shuffling in and out of

 3   here like it's a basketball game -- timely because of

 4   the NCAA tournament -- shuffling in and out of here

 5   because -- like a basketball game.  And I'm not so

 6   worried about the -- a defendant being present/not

 7   present.  She could even testify by video.  That's

 8   not an -- that's not an issue.

 9          I want to know about this issue with the, with

10   the partner and -- tell me about that.  Tell me what

11   the real problem is.

12          MR. MOORE:  Your Honor, shortly before

13   March 13th, Mr. Fowler fell down the stairs.  He

14   fractured his leg and ankle in seven places.  He was

15   rushed to the hospital, had emergency surgery on

16   March 13th.  He's going to be in a cast for, you know,

17   eight to twelve weeks after that, which will require

18   physical therapy for some period of time to be

19   determined.  And so Mr. Fowler is not able to, really,

20   get out of bed or use a computer too much at this point

21   in time.  He certainly can't travel from Chicago to

22   Champaign.

23          The additional issue here is that we don't

24   currently at the firm have anyone that has the capacity

25   to jump in along with Ms. Stryker and get up to speed

1    to handle the case.

2          THE COURT:  Okay.  The trial is a month away.

3    All the discovery's been done.  You're telling me you

4    don't have anybody at the law firm that could get -- I

5    mean, a disadvantage you have is I'm also the only

6    judge here, which means I do all the criminal cases.

7    And we have AUSAs that get up to speed on multi-week

8    trials in a little over a week.  I mean, now, they

9    might be more experienced trial litigators, but I doubt

10   in an entire firm you can't find some combination that

11   can do this.

12         Well, put that on pause for a second.

13         What's -- so I understand, Mr. VanPuymbrouck,

14   Ms. Cutler, you're opposing the continuance.  You want,

15   you want us to stick with our April 23rd trial date.

16   There's no cooperation from either side; that's --

17   between the two sides.  You want your trial date, and

18   you don't want to move it.  Is that accurate?

19         MR. VAN PUYMBROUCK:  Yes, Your Honor.  And I

20   apologize if this is putting any stress on the Court.

21         As you recall, Your Honor, this was very

22   difficult to find even four days.  And you know that

23   this was continued previously, once by the defendants

24   and then by the Court on its own volition.  It's been

25   five years since Mr. Bynum was terminated.  And four

1    days -- a four-day trial, Judge, is not a difficult

2    task when it comes to trials.  The facts are simple,

3    and the case is not complex.

4          THE COURT:  All right.

5          MR. VAN PUYMBROUCK:  So we don't -- yeah.  I'm

6    sorry, Judge.  I'll stop at that.

7          THE COURT:  All right.  Let me throw in

8    something else so both of you understand this.  I also

9    have looming criminal trials that might bump you out of

10   the way anyway, and I'm not going to know that until

11   about a week before this trial is set.  I warned both

12   sides of this.  And I know you're all from Chicago, and

13   I have this conversation very frequently with law firms

14   from Chicago.  There are not other judges in Urbana.

15         So when I offer you, to have you consent to

16   the magistrate judge and for whatever tactical reason

17   is involved -- and, oftentimes, it's an incorrect

18   tactical reason -- I then have to find a date.  And the

19   outrageous responses I get when I have a -- set a

20   status hearing the Friday before the trial is supposed

21   to start and I say *Guess what?  Your trial is being*

22   *moved.  Here's the new date*.  And then we have a

23   contest between the two sides as to who's busier.  And

24   I can tell you whose schedule wins.  Mine.

25         So we have that exact same scenario developing

1    again.  I'm going to leave the trial as it is on the

2    current date.  Both sides should understand:  If you

3    resist consenting for whatever reason there could be at

4    having the magistrate judge try the case, there is a

5    very good chance on the Friday before I'm going to tell

6    you I'm doing a criminal trial instead, and you're

7    gone.  And then I will pick a new date that satisfies

8    my schedule regardless of your calendars.

9           You are foolish to not consent at this point.

10   I mean, this is a 2020 civil case.  You've got

11   2018/2019 civil cases that you're going to be running

12   into who also want time on my calendar because criminal

13   trumps everything, and I'm the only judge that does

14   criminal.  I'm the only district judge here.  So,

15   again, don't think Chicago Federal.  You're not in

16   Chicago.  Wise up.

17          Right now, the trial remains set.  I've

18   reviewed the final pretrial order.  It looks fine to

19   me.

20          I'm going to go over how we're going to

21   conduct jury selection.  And then you can wait; and if

22   the Friday before the trial is supposed to start you

23   see there's a status hearing set, it's going to be

24   bumped.  If I don't know -- if I have a date where I'm

25   going to set it, you won't even see a status hearing.

1    You'll just see a docket entry that says:  *This is your*

2    *new trial date.*  And it won't say it, but in essence

3    it's:  *Deal with it.*  So four days out of my calendar

4    with fighting about dates is really a good way to find

5    yourself in a jam on my calendar with criminal cases,

6    which both sides have managed to do at this point.

7            All right.  So as it stands right now, I've

8    got it set for April 23rd for four days.  Who's going

9    to be at the, at the plaintiff's table?

10           MR. VAN PUYMBROUCK:  It will be myself, Your

11   Honor.  Ms. Cutler is making arrangements.  She's got a

12   family member that needs special attention.  I may see

13   if I can find additional counsel to join me.  But at

14   this point, it will be myself.  My paralegal will be

15   with us as well.

16           THE COURT:  What's her name?

17           MR. VAN PUYMBROUCK:  Her name is Jennifer

18   Pelosi.

19           THE COURT:  The court reporter needs you to

20   spell that for her.  Like the, like the former Speaker

21   of the House Pelosi?

22           MR. VAN PUYMBROUCK:  Yes.  Exactly.

23           THE COURT:  Okay.  Jennifer Pelosi, like the

24   former Speaker of the House.  All right.

25           Anybody else with you?  You said maybe

1  somebody else from your firm; but as far as you know

2  right now, it's just you and Ms. Pelosi?

3          MR. VAN PUYMBROUCK:  Yeah.

4          MS. CUTLER:  I will, I will try to be there.

5          THE COURT:  Okay.  And possibly Ms. Cutler.

6          MS. CUTLER:  Yes.

7          THE COURT:  All right.  Who's going to be

8  there on behalf of the defense?

9          MR. MOORE:  Ms. Stryker will be there, and we

10  will notify the Court by the end of this week who will

11  be appearing along with her.

12          THE COURT:  Any, any paralegals?  Anybody

13  there for evidence presentation?

14          MR. MOORE:  Do we have a paralegal on this

15  file, Ms. Stryker?

16          MS. STRYKER:  I believe we do.  I'm not sure

17  if she's going to be present.  I can give her name now.

18  Otherwise, we can notify the Court by the end of this

19  week if she's going to be present.

20          THE COURT:  However you need to do it.

21          MR. MOORE:  Why don't you give her name.

22          THE COURT:  Yeah.  Go ahead and give it to me

23  because I need it -- when we're picking the jury, I

24  want to tell them who's sitting at the table.

25          MS. STRYKER:  Her name is Cecily Boley.  It's

 1  C-e-c-i-l-y.  Last name Boley, B-o-l-e-y.

 2            THE COURT:  Okay.  All right.

 3            I've read the proposed statement of the case.

 4  I'm going to massage it a little bit, put it in more

 5  English basically --

 6            MR. VAN PUYMBROUCK:  Thank you, Your Honor.

 7            THE COURT:  -- for the, for the jury because I

 8  have to read it to the jury to have them understand

 9  what, what this case is about.  I can synthesize it

10  from what's in the pretrial order.

11            All right.  You can tell me the day of jury

12  selection whether you want me to read the stipulation

13  of facts before opening statements, after opening

14  statements, or periodically during the trial as

15  appropriate.  You can wait until then.

16            I'll go through your witness list the morning

17  of trial before jury selection to verify who you're

18  going to call.  I have to read the names of potential

19  witnesses to the jury to make sure they don't know

20  anybody.

21            The exhibit list looks fine to me.  I didn't

22  see anything that struck me as going to be a big fight

23  about anything.

24            The jury selection process.  You'll each have

25  jury books with information as to each potential juror.

1  I've gone back now to using old-school, three-ring

2  notebooks.  We're not using iPads or other devices that

3  cause problems with some technologically challenged

4  attorneys.  So we're just using three-ring binders now,

5  back to old school.  It's got the questionnaires

6  printed out with the juror number at the bottom of each

7  page.  They're in numerical order.

8       I put fourteen people randomly in the, in the

9  box.  I ask general questions as to the civil process,

10  the case, make sure they all have the correct attitude.

11  I'll then ask specific questions as to each juror to

12  assist counsel.  And then I conclude by asking some

13  more general questions about the case.  By the time I'm

14  done asking questions and by the time you've read

15  what's in the questionnaires, in a case like this I

16  don't really anticipate any follow-up questions.

17       If you do want to ask a follow-up question, do

18  not try to begin arguing or indoctrinating.  So a good

19  follow-up question, for example, would be if someone

20  down here says *I work at ABC Corporation* and all of us

21  up here know that's a corn processing plant but you

22  have no idea what they do, a good follow-up would be:

23  *What do you do at ABC Corporation?*  A bad follow-up

24  would be something attributed to credibility of

25  witnesses or something like that.  So, I mean, make

*Bynum v. Bandza, et al., ILCD No. 20-2343 -- Final Pretrial Hearing (03-25-2024)*

1    sure it's an actual follow-up to some question that I

2    have asked.  Don't go off on your own.

3              Outside the venire's presence, I'll take any

4    strikes for cause.  I excuse them from the, from the

5    courtroom, and then I take strikes for cause.  Assuming

6    there are none -- if there is one -- I'm usually pretty

7    good about striking people during selection on my own;

8    I just excuse them.  But if I miss somebody and

9    somebody believes I should strike somebody for cause in

10   a civil case, if I find merit to it I'll remove that

11   juror, replace them, and go through that same set of

12   questions again.

13             Assuming that we end up with the fourteen

14   people in the box, each side gets three strikes.

15   Plaintiff goes first.  We alternate:  Plaintiff,

16   Defendant, Plaintiff, Defendant, Plaintiff, Defendant.

17   Now, importantly, you are not required to use all of

18   your strikes.  If you pass, that strike is lost, but

19   you don't have to use all strikes.

20             So, theoretically, if nobody struck anybody --

21   which I have yet to see happen -- if nobody struck a

22   single potential juror, we'd have a jury of twelve with

23   the last two people coming in the box being the two

24   alternates.  But if both sides use all three strikes,

25   fourteen minus six is eight.  That's our jury of eight,

1   sufficient for a federal trial.

2           I will synthesize my own instructions from the

3   proposed instructions.  We'll have a discussion, a jury

4   instruction conference at some point during the trial,

5   clearly before closing arguments.  I tend to prefer

6   Seventh Circuit Pattern Instructions over IPI or other

7   instructions, but that's for another hearing.

8           Court hours.  Try to be here a little after

9   9:00, no later than 9:10.  We usually start around

10  9:15.  If everything goes as typically happens, we're

11  going to have jurors that are from the far northern

12  part of this district -- this division and the far

13  southern part.  So we'll have people from the edge of

14  Kankakee, or off in the hinterlands of Kankakee County,

15  and as far south as southern Macon County, below

16  Decatur, and below that down by Paris, Illinois -- in

17  other words, people that are literally driving as far

18  as you are from Chicago to be here.

19          And, let's see, in April we'll be having --

20  yeah, in April we have agricultural activities also,

21  which means those people that are on two-lane roads are

22  going to run into combines and tractors, so I start at

23  9:15 because some people are going to have trouble

24  getting here.  For that same reason, we usually leave

25  sometime around 4:00 or a little bit after because

1    they're going to have a two-hour drive home.

2         With attorneys on both sides, I'm not going to

3    put any time limits on opening statements or closing

4    arguments, although I always tell attorneys:  I have

5    seen more attorneys lose their cases because they talk

6    too much.  Just remember:  Collectively, the jury is

7    not stupid; and you might like hearing your own voice,

8    but lots of times jurors do not.

9         We have courtroom technology that's available

10   if you want to bring laptops down for evidence

11   presentation.  We have ways to hook that up.  We have

12   an outstanding IT section here in the courthouse, so

13   they can help -- usually -- overcome any IT problems.

14        Let's see.  If you do have a number of

15   exhibits, which I know you do from the exhibit list, it

16   helps if you bring the exhibits down on a flash drive

17   to provide to the Court, as well as a hard copy.  Bring

18   both.  But if you have them on a flash drive, thumb

19   drive or something, that definitely helps us.

20        This isn't a prisoner case, so I don't have to

21   worry about being in civilian clothing.  I don't need

22   to talk about shackling and handcuffs.

23        That's it.

24        All right.  So at the moment, the motion to

25   continue is denied, although the trial may be continued

*Bynum v. Bandza, et al., ILCD No. 20-2343 -- Final Pretrial Hearing (03-25-2024)*    15

1    on the Court's own motion shortly before this trial

2    date is set, and I will reset it on a time that

3    accommodates my schedule.

4            If you need consent forms, you can find them

5    from the website.  I strongly encourage both sides to

6    consent.

7            I will tell you this:  If I pick a new date

8    based on one of these ....

9                *(Brief pause in proceedings.)*

10    THE COURT:  Yeah, I can tell you right now:

11    That date is going to be loaded up this afternoon with

12    criminal cases.  I don't know who's going and who's

13    not.  If that, if that date that I pick doesn't work,

14    don't even think about filing a motion to continue.

15            MR. VAN PUYMBROUCK:  Understood.

16            THE COURT:  You're stuck.  So if I move it,

17    I'm going to pick a date that works with my calendar,

18    and that's the day it's going to be.  So any witnesses

19    unavailable, any attorneys unavailable, my response is:

20    *I don't care at this point.*  You've now been warned

21    once politely and today not as politely.

22            Are we in Chicago?  Anybody?  Anybody?  No.

23    There's not a lot of district judges down here.  Just

24    me.

25            So, that's it.  I'll see everybody here on --

 1          MR. VAN PUYMBROUCK:  Judge, can I ask you a

 2   question?

 3          THE COURT:  Yeah.  Go ahead.

 4          MR. VAN PUYMBROUCK:  Yeah, Darren

 5   VanPuymbrouck, Your Honor.

 6          You might recall that initially -- and this is

 7   just by way of background -- the plaintiffs did consent

 8   to the magistrate.  The defendants did not.  But

 9   thereafter, the magistrate conducted a settlement

10   conference.

11          THE COURT:  Sure.

12          MR. VAN PUYMBROUCK:  Does that change your

13   view at all about --

14          THE COURT:  No.  So we have --

15          MR. VAN PUYMBROUCK:  -- consenting?

16          THE COURT:  -- we have three magistrate judges

17   in the district, and they rotate.

18          MR. VAN PUYMBROUCK:  Okay.

19          THE COURT:  They have a -- they have a system

20   set up that moves incredibly smoothly because here and

21   in Rock Island ....

22                    *(Discussion off the record between the*

23                    *Court, court reporter, and clerk.)*

24          THE COURT:  Yeah.  Between Rock Island and

25   Urbana, the magistrate judges do civil trials --

1 probably do the bulk of the civil trials, simply

2 because Rock Island also only has one district judge --

3 so same scenario as I'm talking about.

4         If you -- who did the settlement conference?

5 Hawley or Long?

6         MR. VAN PUYMBROUCK:  Judge Long.

7         THE COURT:  So you'd go to Judge Hawley.

8         MR. VAN PUYMBROUCK:  Okay.

9         THE COURT:  It's very, it's very smooth.  They

10 have the whole process set up.  I don't get involved in

11 it because it moves like butter.  It's, it's -- it's

12 great.  It's on rails.  It's not an issue, and they're

13 both very good about working with finding times that

14 accommodate everybody.  They're very good about that.

15         So I just got to -- there are times when I

16 just don't get involved with things, where the other

17 district judges don't get involved with things.  And

18 when you consent to a magistrate, we just step back

19 because they know what they're doing far better than

20 me.

21         Is that --

22         MR. VAN PUYMBROUCK:  So, Judge, can I ask

23 you -- because I want to be clear on this.  So the

24 Friday before the current trial date, we may or may not

25 hear from you?

1          THE COURT:  Yes.

2          MR. VAN PUYMBROUCK:  Are you asking the

3    parties to consider consent before that Friday?

4          THE COURT:  Yeah.  I mean, that would probably

5    be the smart move, but I'm not telling you -- you don't

6    have to consent.  You can have me.

7          MR. VAN PUYMBROUCK:  I understand.

8          THE COURT:  I've got that date set aside now,

9    April 23rd.  The number of criminal defendants who

10   plead guilty the week before their trial is set is --

11   it's high.  So, --

12         MR. VAN PUYMBROUCK:  Yes.

13         THE COURT:  -- you know, I may have motions to

14   continue trials and guilty pleas -- also done, by the

15   way, by Judge Long -- all on that week before your

16   trial date of April 23rd.

17         I may end up looking down on Friday afternoon,

18   and we may realize:  Wait, this trial set for

19   April 23rd, criminal trial, is going to go.  So then --

20         MR. VAN PUYMBROUCK:  Right.

21         THE COURT:  -- then we -- okay, that's a lie;

22   it's not me; it's my courtroom deputy -- then sends out

23   a, sends out a -- enters a text order, saying the trial

24   is vacated and gets a new trial date from me.  So ....

25         MR. VAN PUYMBROUCK:  Right.  If we did consent

1   to the magistrate jointly, would that trial date

2   remain?  Or does that depend on the magistrate?

3          THE COURT:  You work with Judge, Judge -- you

4   said it would be Judge Hawley if Judge Long did the

5   mediation, so --

6          MR. VAN PUYMBROUCK:  Right.

7          THE COURT:  -- just work with Judge Hawley and

8   find a date that works for everybody.

9          And the magistrates are very accommodating

10  because they, by law, cannot do criminal trials.

11  That's only the district judges.

12         MR. VAN PUYMBROUCK:  Right.

13         THE COURT:  So their schedules are a lot more

14  open than any district judges down here.

15         MR. VAN PUYMBROUCK:  All right.

16         THE COURT:  So --

17         MR. VAN PUYMBROUCK:  Very good.

18         THE COURT:  -- there we go.

19         MR. VAN PUYMBROUCK:  Thank you.

20         THE COURT:  All right.

21         MR. VAN PUYMBROUCK:  Thank you, Judge.

22         THE COURT:  Anything else from -- anything

23  else from either side?  Anything?

24         MR. MOORE:  A real quick practical question,

25  Judge:  If we do proceed on the 23rd, how many exhibit

1   binders would you like us to prepare for the jury?

2          THE COURT:  That has not been working out

3   well.  Don't worry about giving exhibit binders to the

4   jury.  Just show them the exhibits because we've tried

5   doing binders before, and we end up having a gigantic

6   mess in the jury box as they're trying to flip through

7   things on their lap, and it's -- it's a mess.

8          MR. MOORE:  Understood.

9          THE COURT:  You need one for the witness.  If

10  you want to give me one, that's fine.  Although usually

11  we've started showing things -- even if they're not

12  able to be shown with a computer, with a laptop up on

13  the screen -- we have a great big screen that the

14  jurors look at.

15         MR. MOORE:  Great.

16         THE COURT:  And even if you only have it in a

17  hard copy, we've got an overhead projector that works

18  just as well also.

19         So I think -- we get, we get very positive

20  feedback from the jurors when we don't hand them

21  binders.  When we hand them binders, I get very

22  negative feedback on that.  So ....

23         MR. MOORE:  Less for us to pack.  Thank you,

24  Your Honor.

25         THE COURT:  Yeah.  Just make sure you have one

1    for the witness.  That makes things go a lot smoother.

2         MR. MOORE:  Yes.

3         THE COURT:  If you want to give me one, that's

4    fine, although I usually have enough paper up here I

5    can get by without one also.  Either way.  All right.

6         MR. MOORE:  Thank you, Judge.

7         THE COURT:  As far as I know as things stand

8    right now, I'll see everybody here on April 23rd.  All

9    right.

10        MR. MOORE:  Thank you, Your Honor.

11        THE COURT:  That will be all for the record.

12   Thank you.

13        MR. VAN PUYMBROUCK:  Thank you.

14             *(Hearing concludes, 10:54 a.m.)*

15   * * * * * * * * * * * * * * * * * * * * * * * *

16             REPORTER'S CERTIFICATE

17        I, LISA KNIGHT COSIMINI, RMR-CRR, hereby

18   certify that the foregoing is a correct transcript from

19   the record of proceedings in the above-entitled matter.

20        Dated this 2nd day of April, 2024.

21

22             s/Lisa Knight Cosimini
             _____
23             Lisa Knight Cosimini, RMR-CRR
             Illinois License # 084-002998

24

25