**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| JIMMY LEE BYNUM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-CV-2343 |
| | ) | |
| v. | ) | |
| | ) | Judge Jonathan Hawley |
| COMMONWEALTH SERUM | ) | |
| LABORATORIES BEHRING, | ) | |
| a Corporation, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S POST-TRIAL BRIEF

Plaintiff, Jimmy Lee Bynum, by and through his attorneys, Mark Raven LLC, hereby submits his Post-Trial Brief with proposed findings of fact, conclusions of laws, and requested damages as follows.

## INTRODUCTION

On May 9, 2025, after a four-day trial, the jury unanimously found that the Defendant interfered with Plaintiff's FMLA rights and awarded him a portion of his back pay. Thereafter this Court conducted a one-day bench trial to determine the issues of front pay and liquidated damages. Importantly, the Defendant did not present any evidence on either issue during the bench trial, or during the jury trial related to front pay.  Plaintiff, on the other hand, presented the unrebutted expert testimony of his damages expert establishing, through Plaintiff's financial records, the difference between what Plaintiff would have made but for the Defendant's interference with his FMLA rights and what his wages and benefits have been, and will be, at his job with Union Pacific.

During the jury trial, the Defendant failed to overcome the strong presumption for liquidated damages, as Defendant did not sustain its burden to prove its interference with Plaintiff's FMLA rights was made in good-faith and with an objectively reasonable belief that its conduct did not violate the FMLA. Rather, the undisputed evidence establishes that the Defendant knowingly and intentionally fired the Plaintiff because he exercised his FMLA rights. With due respect, the Defendant does not come close to satisfying its heavy burden to avoid liquidated damages here.

I.      **LIQUIDATED DAMAGES**

A.      *Proposed Findings of Fact*

1.      Defendant knew that Plaintiff had FMLA leave rights to assist his asthmatic son when he suffered an asthmatic attack at the time it fired Plaintiff.

2.      Defendant's only instruction to the Plaintiff about notice it required for invoking his FMLA leave rights was to call off through the company's security office and to state "FMLA."

3.      On the night in question, Plaintiff called off to the company's security office stating "FMLA."

4.      The only FMLA right Plaintiff had at the time of his call off was to assist his son with an asthmatic attack.

5.      Defendant was on notice from the time when Plaintiff called off that he was doing so to assist his son with an asthmatic attack as it was the only FMLA leave right the Company granted the Plaintiff.

6.  Immediately upon receipt of notice that Plaintiff invoked his FMLA leave right to assist his son with an asthmatic attack, Plaintiff's supervisor proposed to HR that the company terminate the Plaintiff for invoking his FMLA leave rights and questioned if such a violation of FMLA would hold up.

7.  Although the Plaintiff's supervisor and the HR supervisor agreed that before firing the Plaintiff they needed to meet with the Plaintiff and ask him for more details about his FMLA call off, they never did so before firing the Plaintiff.

8.  At no time before the Defendant fired the Plaintiff, did it investigate the Plaintiff's FMLA call off including whether his son had suffered an asthmatic attack requiring his father's assistants.

9.  At no time before the Defendant fired the Plaintiff, did it advise the Plaintiff of its claim that his FMLA call off was five minutes after the customary 30-minute deadline.

10.  The Defendant accused the Plaintiff of lying about his son's asthmatic attack, even though the Defendant failed to do any investigation into the Plaintiff's invocation of his FMLA rights.

11.  The Defendant presented the testimony of Christina Adams to the jury knowing that she had lied under oath during her deposition in claiming she did not know the reasons why she was fired. The testimony of her supervisor established that Ms. Adams had knowledge of exactly why she was fired.

B.     *Proposed Conclusions of Law*

The Defendant failed to meet its burden to show that its firing of the Plaintiff was in good faith and that the Defendant had objectively reasonable grounds to believe that Plaintiff's firing did not violate the FMLA. Under the FMLA, liquidated damages are presumed unless the employer demonstrates that it acted reasonably and in good faith. *Sheils v. GateHouse Media, Inc.*, No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303, at *32 (N.D. Ill. Oct. 27, 2015), *citing to* 29 U.S.C. § 2617(a)(1)(A)(iii); *Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 498 (7th Cir. 2014). The FMLA provides for liquidated damages equal to the amount awarded for compensatory damages and prejudgment interest. *Sheils*, No. 12 CV 2766, 2015 U.S. Dist. LEXIS 145303, at *32, citing to 29 U.S.C. § 2617(a)(1)(A)(iii); *Byrne v. Avon Prods., Inc.*, 125 Fed. App'x 704, 705 (7th Cir. 2004) (awarding liquidated (doubled) damages under the FMLA).

The employer is responsible for showing that they acted in good faith ("The employer bears a substantial burden in showing that it acted in good faith and with reasonable grounds to believe that its actions did not violate the [statute].") *Baier v. Rohr-Mont Motors, Inc*., 175 F. Supp. 3d 1000, 1010 (N.D. Ill. 2016) (additional citation omitted). "Courts have found that the employer failed to meet this burden when: (1) there was sufficient evidence for the jury to rule against the employer; and (2) the evidenced adduced at trial did not establish a good faith basis for the retaliatory action." *Baier v. Rohr-Mont Motors, Inc., 175 F. Supp. 3d 1000, 1010 (N.D. Ill. 2016), citing to Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2011 U.S. Dist. LEXIS 82291, 2011 WL 3236024, at *6 (N.D. Ill. July 27, 2011).

There is simply no evidence from which the Defendant can meet its burden of showing that it acted in good faith and with a reasonable belief that it was not violating the FMLA statute. The facts show that the Defendant fired the Plaintiff for allegedly calling off five minutes after

4

the customary 30-minute deadline while he invoked his FMLA rights to assist his son through an asthmatic attack. It is undisputed that the Defendant knew from the moment the Plaintiff called the Defendant's security office and stated "FMLA" that the Defendant was fully aware that his call off was protected under FMLA. It is equally undisputed that shortly after being advised of Plaintiff's FMLA call off the Defendant immediately acted to terminate the Plaintiff even though its own employees questioned whether such a firing would be in violation of the FMLA.

Thereafter, although the Defendant employees agreed that before terminating the Plaintiff for exercising his FMLA leave rights it needed to gather additional information about the circumstances of his call off, the evidence shows that the Defendant never requested a further explanation from the Plaintiff or even advised him of their position that he could be terminated for calling off five minutes late. With regard to the only argument that the Defendant has that such an inquiry exists, the jury rejected Christine Bandza's testimony that she had made such a request to the Plaintiff, or that the Plaintiff had refused to provide a further explanation. This is shown by finding that the Defendant interfered with the Plaintiff's FMLA rights.

The jury's finding is fully corroborated by common sense, because it makes no sense that the Plaintiff would have refused to explain the circumstances of his son's asthmatic attack if he was asked about what occurred. The Defendant's attempt to advance such a dubious claim is further evidence of their bad faith and lack of a reasonable basis to believe they were not violating Plaintiff's FMLA rights.

Defendants sought to use their termination of the Plaintiff to humiliate him before his coworkers and fellow union members as demonstrated the undisputed evidence that he was called into a meeting where he was to be fired without notice, stripped of his company credentials, and removed from the facility in the presence of security guards past his fellow

5

workers and his fellow union members. By contrast, when the Defendant fired Christine Adams, it allowed her to remain in her office for weeks and to exit the company on her own schedule without any public audience.

Further proof that the Defendant cannot sustain its burden to avoid liquidated damages was adduced not only the Plaintiff, but by the testimony of the Defendant's own witnesses including, its 30(b)(6) designee Steven Stewart who accused the Plaintiff, his wife, and his son of lying about the asthmatic attack that led to the FMLA call off at issue. Given that the evidence shows that the Defendant did not undertake any investigation, its false accusations against the Plaintiff and his family are compelling evidence of the Defendant's bad faith and its lack of a reasonable basis to believe that its firing of the Plaintiff did not violate the FMLA.

## II. FRONT PAY

### A. *Proposed Findings of Fact*

1. Defendant interfered with Plaintiff's FMLA rights by firing him on August 31, 2018, more than seven years ago.

2. Defendant knowingly interfered with Plaintiff's FMLA rights when it fired him on August 31, 2018.

3. Defendant accused the Plaintiff, his wife, and his son of lying about the reasons for his FMLA call off without conducting any investigation.

4. Plaintiff's direct supervisor advocated for Plaintiff's termination knowing he had invoked his FMLA rights.

5. Defendants did not conduct any investigation into the circumstances surrounding the Plaintiff's FMLA call off before firing him for calling off five minutes late.

6.   Defendant fired Plaintiff by calling him into a meeting without notice that he
     was to be terminated, by removing his credentials, and by escorting him out of
     the facility accompanied by security guards in front of fellow employees and
     union members causing the Plaintiff humiliation and shame.

7.   The difference between the wages and benefits the Plaintiff would have
     received but for the Defendant's interference with his FMLA rights and the
     amount he has and will make in the future through his employment with
     Union Pacific Railroad is between $1,012,583-$1,124,853.

8.   The Defendant did not provide any alternative calculation of the difference
     between what the Plaintiff would have made and what he will make.

   B.   *Proposed Findings of Law*

"An employee may be entitled to both back pay and front pay as a remedy for losses
flowing from an employer's interference with his substantive rights under the FMLA ...."
*Cloutier v. Gojet Airlines*, 996 F.3d 426, 449 (7th Cir. 2021) (*additional citation omitted*). Front
pay is awarded in situations where reinstatement is not an option as "front pay is the functional
equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same
benefit (or as close an approximation as possible) as the plaintiff would have received had she
been reinstated." *Cloutier*, 996 F.3d 426, 449 (7th Cir. 2021), *citing to, Williams v. Pharmacia,
Inc.*, 137 F.3d 944, 952 (7th Cir. 1998); and *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862
(7th Cir. 2001) ("When reinstating a successful Title VII plaintiff is not feasible, front pay is
usually available as an alternative remedy."). The "front pay award gives the employee the
present value of the earnings from her old job less the earnings from her new (or expected) job."
*Cloutier*, 996 F.3d 426, 449, *citing to Williams*, 137 F.3d at 954.

7

Defendant adduced absolutely no evidence that reinstatement of the Plaintiff is at all realistic[1]. To the contrary, the evidence adduced at trial by the Plaintiff aptly demonstrates that he could not be reinstated in his prior job with the Defendant. First, the enormous amount of time that lapsed between his firing and the jury's determination that the Defendant interfered with Plaintiff's FMLA rights of over seven years, is, in and of itself, sufficient reason to show that reinstatement is not feasible.

Second, the evidence adduced by the Plaintiff demonstrates the Defendant's hostility against the Plaintiff as shown by the evidence that the Defendant repeatedly accused the Plaintiff, his wife, and his son of lying about the asthmatic attack that prompted the Plaintiff to invoke his FMLA rights with no investigation whatsoever. Additional evidence was adduced of the Defendant's hostility against the Plaintiff by virtue of their removal of the Plaintiff without notice and in front of fellow workers and union members, particularly where the HR supervisor who authorized Plaintiff's termination despite his FMLA leave rights, was terminated but allowed to remain in her office and to exit the company at a time for choosing and not before her coworkers.

Third, the Defendant presented the testimony of Christina Adams to the jury knowing that she had lied under oath during her deposition in claiming she did not know the reasons why she was fired. The testimony of her supervisor, before the jury, however, establish that Ms. Adams, in fact, was told exactly why she was fired. The fact that the Defendant presented this trial testimony shows the animus that they hold toward Plaintiff.

 "Reinstatement is not feasible if, for example, there is animosity between the plaintiff and her would-be supervisor." *Follis v. Memorial Medical Center*, No. 08-3056, 2010 U.S. Dist.

---

[1] Also, beyond the below, the Defendant also during both its case-in-chief, as well as the cross-examination of Stan Smith, have produced evidence that Plaintiff's previous department has been shut down, and employees reassigned.

8

LEXIS 7648, at *9 (C.D. Ill. Jan. 29, 2010), citing to *Hybert v. Hearst Corp.*,900 F.2d 1050, 1055 (7th Cir. 1990). Here, such hostility between the Plaintiff and the Defendant is manifest and aptly demonstrates that reinstatement is not possible.

Front pay is awarded to compensate an individual for the future effects of the FMLA violation that occurred. Here, Stan Smith has set forth the exact amount of the damages that the Plaintiff has suffered and will continue to suffer into the future due to the actions of the Defendant. The front pay award should be the value of earnings from Plaintiff's job with the Defendants less the earnings from his new job, as set forth in *Cloutier.*

Mr. Smith set forth multiple scenarios for the Court to consider, based upon the documents utilized in determining the Plaintiff's annual income, the consideration of wage and benefit growth, and other factors. Taking the Plaintiff's annual income at Defendant's workplace, and creating an offset for the Plaintiff's new job at Union Pacific, Mr. Smith testified to a range of $1,012,583-$1,124,853[2] for front pay damages. This testimony is unrebutted and has been provided by an expert witness with substantial credibility and credentials. As such, the Plaintiff asks for $1,124,853 in damages for front pay based upon the rationales set forth by Mr. Smith.

---

[2] The Plaintiff fully expects the Defendant to make an argument that the Plaintiff is working off of updated numbers from a second report from Stan Smith that they did not receive. However, what the Defendant did not understand is that the numbers in the second report actually decreased from what was previously presented as marked as an exhibit at trial. As such, below the Plaintiff will set forth the ranges contained within both reports (the 2024 report, marked as Exhibit 20 at the time of trial, and the 2025 report, which was utilized by Mr. Smith during his testimony). Utilizing Smith's 2024 report, this same range would have been $1,188,022-$1,488,965 a substantially higher amount. As such, Defendants were actually helped by the updated report, and any argument that they were somehow harmed by the updated report is disingenuous.

### III.    DAMAGES AND PRE-JUDGMENT INTEREST

"The FMLA provides that an employer who violates the act shall be liable for liquidated damages equal to the sum of the employee's lost wages and benefits and the interest on that award…. FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). *Williams v. Ill. Dep't of Corr*., 2007 U.S. Dist. LEXIS 58937.  Plaintiffs lost wages and benefits consists of the backpay he was awarded by the jury as well as any front pay that may be awarded by the Court along with interest at the prevailing rate on both.

With regard to pre-judgment interest, Seventh Circuit precedent as well as the recent case of *Webb v. Playmonster LLC*, No. 23-cv-442-jdp, 2024 U.S. Dist. LEXIS 71884, at *17-18 (W.D. Wis. Apr. 18, 2024), citing to, *Rasic v. City of Northlake,* No. 08 C 104, 2010 U.S. Dist. LEXIS 86815, 2010 WL 3365918, at *11 (N.D. Ill. Aug. 24, 2010), establish that "the average prime rate during [the relevant] time" is to be used.  *Webb v. Playmonster LLC*, No. 23-cv-442-jdp, 2024 U.S. Dist. LEXIS 71884, at *17-18, *citing to, Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (additional citations omitted).

Moreover, "[t]he Seventh Circuit has stated that '[a]s a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court." *Am. Nat.'l Fire Ins. v. Yellow Freight Sys.*, 325 F.3d 924, 937 (7th Cir. 2003). At the same time, the Seventh Circuit commented that because "'[p]rejudgment interest is an element of complete compensation,' . . . compound prejudgment interest is the norm in federal litigation." *Id.* at 937-38.

Moreover, as found in *Rasic v. City of Northlake*, 2010 U.S. Dist. LEXIS 86815 such compounding should be done on a monthly, and not an annual, basis. (See, *Ryl-Kuchar v. Care Centers, Inc.*, 564 F.Supp. 2d 817, 829-30 (N.D. Ill. 2008) (district court awarded prejudgment

10

interest in an FMLA case on the basis of monthly compounding.) As the *Racic* court reasoned, "because [Plaintiff's] lost wages...would have [been] received on a regular ongoing basis for approximately two and one-half years, [c]alculating prejudgment interest on a monthly basis would more completely compensate Mr. Rasic for this ongoing loss of money than would compounding on an annual basis. Plaintiff here is in exactly the same posture as the Plaintiff in *Rasic*, and therefore, Plaintiff respectfully urges the Court to apply monthly compounding interest on Plaintiff's back and potential front pay awards.

Once the Court determines the issue of Plaintiff's front pay and liquidated damages, Plaintiff will submit to the Court a schedule of his damages including interest on his lost wages and benefits, and liquidated damages on back and front pay.

## IV.    FEE PETETION AND COSTS

Although the Court advised the Plaintiff to submit its attorney's fee petition after post-trial briefing and the Court's determination of front pay and liquidated damages, Plaintiff simply takes this opportunity to advise the Court that it will submit both a petition for fees and costs.

JIMMY LEE BYNUM
By: /s/ *Darren Van Puymbrouck*
One of Plaintiff's Attorneys

Darren VanPuymbrouck
Mark Raven LLC
2524 N. Burling Street
Chicago, IL 60614
(312) 304-9530
Darren@Raven.law

11